pealed had remained in force." The concurrence of marriage and seizen, having taken place long prior to the law of 1846, those acts are within the reasoning, and of course, the rights growing out of them are not affected by the repealing act. The dower in this case will be in one-third of the land, exclusive of the improvements, whether it be assigned in the land or by an estimate of its annual rents. Judgment for dower as estimated, and the appointment of commissioners, &c.

## Case No. 7,427.

### The JOHN STUART.

[4 Blatchf. 444.] [1]

Circuit Court, S. D. New York. Aug. 17, 1860. [2]

Edwin W. Stoughton and John J. Latting, for libellants.

Washington Q. Morton and Francis R. Coudert, for claimants.

NELSON, Circuit Justice. The collision in this case occurred in the Pacific Ocean, between the Chincha Islands and Callao, in the night of the 2d of August, 1853. The bark Green Point was laden with some 800 or 900 tons of guano, and was on her way to the port of Callao. The ship John Stuart was in ballast, had left Callao, and was going to the islands for a cargo. The wind was south south east. The bark was heading about north west by west, some of the witnesses say north west by north, and the ship about south west, on her port tack, close-hauled to the wind. It is agreed, that the bark had the wind free, or nearly so. The collision occurred between nine and ten o'clock at night. The night was dark, drizzly and hazy. The vessels were not discovered by each other till within a half or a quarter of a mile. There is some dispute among the witnesses on that point. The bark, on discovering the ship, starboarded her helm. The ship kept her course till at or near the moment of the collision, when she put her helm hard down, and luffed into the wind.

I am inclined to think, upon the whole of the evidence, that the better opinion is, that the two vessels, which, from the courses given, were crossing each other's track at nearly right-angles, in a night dark and hazy upon the water, with drizzling rain, did not discover each other until the collision was inevitable, or, at least, until they were so near as to prevent the adoption, with deliberation, of the proper measure, if any could have been adopted, to avoid it. I am also of the opinion, that, under the facts and circumstances, as shown in the proofs, the ship was not in fault for not taking measures to avoid the disaster, or for not adopting the right manoeuvre at the last moment, conceding that she did not. For the rule is settled, that a vessel which has the wind free, or is sailing before or with the wind, must get out of the way of a vessel that is close-hauled; and it is the duty of the vessel close-hauled to keep her course. St. John v. Paine, 10 How. [51 U. S.] 557, 581; The Catharine v. Dickinson, 17 How. [58 U. S.] 170, 176; The Rose, 2 W. Rob. Adm. 1; The Chester, 3 Hagg. Adm. 316, 318. The complaint here is, that the ship kept her course till it was too late to adopt the proper movement to avoid the disaster; in other words, that she adhered to the nautical rule till it was hopeless to attempt to remedy the consequences of the delay. I am not satisfied that the ship could have adopted any course consistent with the rule of navigation, after the vessels discovered each other, that would have prevented the collision, or that there was any culpable negligence on the part of either vessel, taking into consideration their courses and the thick, hazy weather, in not discovering the other sooner. I agree with the court below in dismissing the libel, and affirm the decree.

## Case No. 7,428.

### The JOHN TAYLOR.

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirming Case No. 3,952a.]